O'Connor v. Maryland Motor Car Ins. Co., 211 Ill. App. 549.

agreed not to transfer any of the stock during her lifetime; that in violation of this agreement a certain defendant transferred some of the stock and threatened to transfer more of it, and refused complainant the support promised, although demanded by her.

---

# John J. O'Connor, Appellee, v. Maryland Motor Car Insurance Company, Appellant.

## Gen. No. 23,569.

1. AUTOMOBILES AND GARAGES, § 7*—*when recovery may be had on automobile theft insurance policy after finding and tender of automobile.* Where an automobile insurance policy provides that the loss shall be payable sixty days after notice, proof of loss, etc., an insured whose car is stolen may recover thereunder where he complies with the provisions of the policy as to notice, proof of loss, etc., although the car is subsequently found and tendered him by the insurer, where it was found more than sixty days after the giving of notice and proof of loss, notwithstanding the policy also provides that it shall be optional with the insurer "to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within thirty days after the receipt of the sworn statement of loss herein required, of its intention so to do; but there can be no abandonment to this Company of the property described."

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. INSURANCE, § 120*—*how contract construed in case of doubt.*
In case of doubt, an insurance contract is to be construed in favor
of the insured rather than of the insurer.

3. INSURANCE, § 171*—*when assignment without insurer's con-
sent does not avoid policy.* The provision in an insurance policy
that it should be void if assigned except with the insurer's assent
cannot operate to defeat a policy assigned by the insured after the
loss for which recovery under the policy is sought had taken place.

Appeal from the Municipal Court of Chicago; the Hon. SHERIDAN
E. FRY, Judge, presiding. Heard in the Branch Appellate Court
at the October term, 1917. Affirmed. Opinion filed July 10, 1918.

ROBERT J. FOLONIE, for appellant.

ADLER, LEDERER & BECK, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the
court.

The plaintiff, John J. O'Connor, having lost an auto-
mobile, upon which he had a theft policy in the defend-
ant company, brought suit and, pursuant to a directed
verdict, recovered a judgment in the sum of $1,375 and
costs. From that judgment this appeal is taken.

The suit was begun on February 21, 1917. The state-
ment of claim recited that the automobile was stolen
September 10, 1916; that notice of the theft was given
to the defendant on September 11, 1916, and proof of
loss waived by the defendant; that under the terms of
the policy the sum of $1,375 became due on November
10, 1916, and that the plaintiff claimed interest thereon
at the rate of 5 per cent. per annum from December
10, 1916. The defendant, in its affidavit of merits, re-
cited that the "automobile in plaintiff's statement of
claim mentioned was not on September 10, 1916, lost
to the plaintiff by theft; * * * that said insured
automobile was recovered before commencement of
this suit, in about November, 1916"; that it was placed
by the police in a garage in Chicago, but that the plain-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

tiff refused to receive it "stating that he would not take it because he had bought another automobile and did not want this one"; that the plaintiff assigned his policy to Louis Geyler Company in violation of the terms of the policy; that the automobile is not lost and that the plaintiff has failed to comply with the provisions and conditions of the policy.

On April 6, 1916, the plaintiff, being the owner of a Hudson automobile, took out a policy of insurance for $1,375 in the Maryland Motor Car Insurance Company, being the defendant company. The policy, among other things, insured the plaintiff from March 31, 1916, to March 31, 1917, for $1,375 "against loss or damage by theft, robbery or pilferage." The policy contained the following: "In the event of loss or damage under this policy, this Company shall be liable only for the actual cost of repairing or, if necessary, replacing the parts damaged or destroyed. It shall be optional with this Company to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within thirty days after the receipt of the sworn statement of loss herein required, of its intention so to do; but there can be no abandonment to this Company of the property described." The policy also provided that the loss, if any, should "be payable sixty days after" certain notice, proof of loss, etc.

On September 10, 1916, plaintiff's automobile, which was left standing at the northwest corner of Randolph and La Salle streets, Chicago, was stolen. The automobile was found by the police on November 13, 1916, and placed in the United Garage in charge of the city custodian. On November 15, 1916, the plaintiff went to the United Garage and identified the automobile as being his, the one that was lost. The front and rear bumpers and searchlight were missing. The wheels were painted white and "the car had a generally disordered appearance." On September 11, 1916, the

plaintiff notified one Claypool, an employee of one Brennan, a representative of the defendant company, of the loss. On September 12, 1916, plaintiff received a letter from one C. D. Greene that he, the latter, had been advised of the theft and was taking steps, through the different police departments, to try to find it, and that he represented "the Maryland Motor Car Insurance Company on losses" of that character. On November 17, 1916, one Brennan, also a representative of the defendant company, wrote to the defendant at Baltimore, Maryland, in part, as follows: "On or about September 10th this car was stolen from a place near La Salle & Washington Streets. He reported the claim to us immediately, and we, in turn reported it to Mr. Greene, our adjuster. We could at that time have taken a Proof of Loss from Mr. O'Connor, but did not do so until we attempted to secure his car. I understand that you gave a reward for the return of the car. I considered that his notifying us was the same as a Proof of Loss. When the sixty days were up, he demanded his money in payment of the loss. The car was not found at that time, but it was two or three days after. The car is now available but the assured refuses to accept the car, as in the meantime he has bought a car. * * * Although, the car is now available to be turned over to claimant, it was not found until the sixty days were up as provided in the policy and I do not consider the fact that he did not sign a Proof of Loss as a defense, because he notified us immediately as soon as the car was stolen and we could have secured a Proof of Loss at that time. Our presenting him the car at the present time does not fulfil the terms of the insurance, and he will not accept it. We recommend as agents of the Company that this Company pay the amount of insurance and accept the stolen car as salvage. I think it business policy to do this and we cannot satisfy the assured otherwise."

Meanwhile, the plaintiff had made a demand in writ-

O'Connor v. Maryland Motor Car Ins. Co., 211 Ill. App. 549.

ing for the amount of the loss. The plaintiff bought a new car on September 15, 1916, and indorsed his policy of insurance in the defendant company as follows: "My interest in this policy is hereby assigned to the Louis Geyler Company." The assignment was made according to the testimony of the plaintiff "as collateral on a note for $1,375.00, in partial payment of the new car." The evidence shows that Brennan and Claypool, representatives of the defendant company, stated that there was no objection to the claim of the plaintiff that his loss had been established and he would get his money. At the close of all the evidence, on a motion of the plaintiff, the court directed a verdict in the sum of $1,375, and, upon the verdict being returned, judgment was accordingly entered.

The automobile was stolen September 10, 1916. Sufficient proof of loss was made on the next day. On November 13, 1916, the automobile was found by the police officers, and on November 15, 1916, the plaintiff received information that it was found and was offered the automobile, but refused to accept it. The policy of insurance provided indemnity in case of theft and that the loss should be payable sixty days after notice, proof of loss, etc.

The automobile having been found at a time more than sixty days after proof of loss, the question arises whether the plaintiff may recover. The suit was not brought until more than three months after the finding of the automobile. Inasmuch as the policy provided that "the sum for which this company is liable pursuant to this policy, shall be payable sixty days after the notice," etc., and as the automobile was not found prior to sixty days after the proof of loss, it is the claim of the plaintiff that his right to recover arose immediately on the expiration of the sixty days after the notice and proof of loss and was not divested when the automobile was found a few days later. No parallel case has been cited, but we have been referred to cer-

tain cases involving the construction of marine insurance policies. It is the claim of the appellant that, as the automobile was subsequently found, and at the time of the institution of the suit existed in specie, and as the policy contained the words "but there can be no abandonment to this company of the property described," and as the object of the policy is indemnity and as the plaintiff's action must be founded on the nature of his damnification as it really is at the time action is brought, no recovery can be had for total loss. It must be borne in mind that the policy in question insures against fire as well as theft, and an examination of the context of the word "abandonment" discloses that the insured has provided that "in the event of loss or damage" it should be "liable only for the actual cost of repairing or, if necessary, replacing the parts damaged or destroyed." That it should be optional on the part of the insured "to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice * * * of its intention so to do." Following the foregoing occur the words "but there can be no abandonment to this Company of the property described." Evidently that provision of the policy refers only to property which may be repaired, rebuilt or replaced. It may be that, under the terms of the policy, the insurer was entitled, upon giving notice within thirty days after receipt of certain information to the insured, to "replace the property lost." However, a careful analysis of the text of the policy, pertinent to the subject of abandonment, leads us to the conclusion that it does not apply to the circumstances of this case. It may well be argued that, if the insured is bound to take the property whenever it is found, even though after the sixty days, then it is not true, as expressly stated in the policy, that the amount of liability "shall be payable sixty days after the notice," etc. Of course the two obligations, the one on the insured

to take the property when found and the other on the insurer to pay within sixty days after notice, are inconsistent—each excludes the other. As to the reason why the rights of the insured should be considered as fixed and inviolable, the language of Mr. Justice Caton in *Norton v. Lexington Fire, Life & Marine Ins. Co.*, 16 Ill. 235, 246, which was a case which involved the subject of abandonment, is as follows: "It is right that the assured should know with certainty what his rights are, and that when his claim has once become fixed to a legal demand for money, he may make his calculations upon that state of affairs, and not be liable to have such legal claim for money defeated by subsequent tender of the property insured." The case is not entirely free from doubt. Completely satisfactory interpretation of the words of the policy is difficult. As, however, in case of doubt the contract is to be construed rather more favorably to the insured than the insurer, we are of the opinion that the judgment is correct. It is claimed by the defendant that as the policy provided that if any part of it should be assigned except by consent of the defendant, the policy would become void, and as the plaintiff on September 15, 1916, assigned his interest in the policy to Louis Geyler Company, that it is void and there can be no recovery. However, no objection was made at the trial that the plaintiff was not the proper party to sue. Under the circumstances, the loss having taken place before the assignment and the policy not then being rendered void, we know of no rule of law which prevents the plaintiff from maintaining suit.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*